UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1-05-113 |
| | : | |
| v. | : | CHIEF JUDGE BECKWITH |
| | : | |
| (1) CLARENCE REMBLE | : | SUPERSEDING INDICTMENT |
| a.k.a. "THE GENERAL" | : | 21 U.S.C. § 841(a)(1) |
| a.k.a. "SMOKE" | : | 21 U.S.C. § 841(b)(1)(A) |
| (2) EARL OWENS, III | : | 21 U.S.C. § 841(b)(1)(B) |
| a.k.a. "EIGHT BALL" | : | 21 U.S.C. § 841(b)(1)(C) |
| (3) JEFF REMBLE | : | 21 U.S.C. § 841(b)(1)(D) |
| a.k.a. "BABY" | : | 21 U.S.C. § 843(b) |
| (4) CAESAR ANDERSON | : | 21 U.S.C. § 846 |
| a.k.a. "CJ" | : | 21 U.S.C. § 856 |
| (5) JAIME COVINGTON | : | 21 U.S.C. § 853(a) |
| a.k.a. "TREY BONE" | : | 18 U.S.C. § 922(g)(1) |
| (6) ANTWAIN ATKINS | : | 18 U.S.C. § 924(a)(2) |
| a.k.a. "TWON" | : | |
| (7) JOHN WAYNE JONES | : | |
| (8) JOYA CALDWELL | : | |
| (9) ADONIA HOGSTEN | : | |
| (10) JUSTIN LAWSON | : | |
| (11) KRISTEN CIARA RICHARDS | : | |
| a.k.a. "SNOW" | : | |
| (12) JOHN WOODWARD | : | |
| (13) JOHN CASSANOVA | : | |
| (14) CARRIE EVANS | : | |
| (15) ELLIE PAULA JONES | : | |
| a.k.a. "PAULA" | : | |
| (16) CJ ROLAND MARTIN | : | |
| (17) JANET ALEXANDER | : | |
| a.k.a. "JAN" | : | |
| (18) JACORY MYSHAWN HOLT | : | |
| a.k.a. "OC" | : | |
| (19) JEFFREY STEPHON CARTER | : | |
| a.k.a. "J'GHOST" | : | |
| (20) DARNELL JEROME MITCHELL | : | |
| a.k.a. "KING D'NELL" | : | |

- - - - - - - - - - - - - - - -

THE GRAND JURY CHARGES THAT:

**Count 1: Conspiracy Violation**

<u>COUNT 1</u>

From in or about October of 2003, up to and including the date of this Indictment, in the Southern District of Ohio and elsewhere, the defendants, **CLARENCE REMBLE, a.k.a. "THE GENERAL," a.k.a. "SMOKE"** (hereinafter **"C.REMBLE"**), **EARL OWENS, III, a.k.a. "EIGHT BALL", JEFF REMBLE, a.k.a. "BABY"** (hereinafter **"J.REMBLE"**), **JOHN WAYNE JONES** (hereinafter **JW.JONES**), **JOYA CALDWELL, ADONIA HOGSTEN, JUSTIN LAWSON, KRISTEN CIARA RICHARDS, a.k.a. "SNOW", JOHN WOODWARD, JOHN CASSANOVA, CARRIE EVANS, ELLIE PAULA JONES, a.k.a. "PAULA"** (hereinafter **"EP.JONES"**), **CJ ROLAND MARTIN, CAESAR ANDERSON, a.k.a. "CJ", JAIME COVINGTON, a.k.a. "TREY BONE", ANTWAIN ATKINS, a.k.a. "TWON", JANET ALEXANDER, a.k.a. "JAN", JACORY MYSHAWN HOLT, a.k.a. "OC", JEFFREY STEPHON CARTER, a.k.a. "J'GHOST"**, and **DARNELL JEROME MITCHELL, a.k.a. "KING D'NELL"**, and others both known and unknown to the Grand Jury, did knowingly and intentionally, unlawfully combine, conspire, confederate, and agree with each other and persons both known and unknown to the Grand Jury, to possess with intent to distribute and to distribute in excess of 50 grams of methamphetamine, in excess of 50 grams of cocaine base (crack), and in excess of 500 grams of cocaine, Schedule II Controlled Substances, and an amount of marijuana, a Schedule I Controlled Substance, in violation of the laws of the United States, to wit: 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), (b)(1)(B), and (b)(1)(D).

It was a part of the conspiracy that **C.REMBLE, ANDERSON,** and **OWENS** would arrange for persons both known and unknown to the Grand Jury to travel from the State of California and the State of Louisiana to the State of Ohio for the purpose of setting up drug distribution operations in the Southern District of Ohio.

It was a part of the conspiracy that **C.REMBLE, OWENS, ANDERSON,** and **JW.JONES** and others known to the Grand Jury would arrange for the delivery of methamphetamine, cocaine, marijuana, and Xanax from the State of California and elsewhere to the Southern District of Ohio.

It was a part of the conspiracy that **ANDERSON, OWENS, JW.JONES, CALDWELL, EVANS,** and **RICHARDS** would receive shipments of methamphetamine, cocaine, marijuana, and Xanax from the State of California in the Southern District of Ohio for the purpose of distribution.

It was a part of the conspiracy that members of the conspiracy would secret narcotics and other items used in the distribution of narcotics at the residence of others both known and unknown to the Grand Jury in the Southern District of Ohio.

It was a part of the conspiracy that **C.REMBLE, OWENS, J.REMBLE, ANDERSON, RICHARDS, EVANS, LAWSON, CASSANOVA,** and **CALDWELL** would supply others both known and unknown to the Grand Jury with narcotics for the purpose of distribution in the Southern District of Ohio.

It was a part of the conspiracy that members of the conspiracy would process the cocaine into crack for further distribution.

It was a part of the conspiracy that members of the conspiracy and others both known and unknown to the Grand Jury would travel between Middletown, Zanesville, Columbus, and Coshocton, Ohio for the purpose of transporting narcotics and U.S. currency.

It was a part of the conspiracy that members of the conspiracy would send, via the United States Postal Service, Federal Express and other shipping service providers, the proceeds of their narcotics trafficking activities from the State of Ohio to others both known and unknown to the Grand Jury in the State of California.

It was a part of the conspiracy that members of the conspiracy would possess firearms to protect and safeguard their narcotics and money.

It was a part of the conspiracy that members of the conspiracy would utilize telephones and cellular telephones to communicate with each other and others both known and unknown to the Grand Jury.

It was a part of the conspiracy that members of the conspiracy would contact other members of the conspiracy from jail facilities for the purpose of facilitating the goals of the conspiracy.

It was a part of the conspiracy that members of the conspiracy would preach and follow the gang tenets of the "Dodge City Crips", a California based gang, to further control the objects of the

conspiracy and strengthen the nucleus of the narcotics trafficking operation.

### Overt Acts

In order to further the objects of the conspiracy and in an effort to attain its objectives, the defendants, and others both known and unknown to the Grand Jury, performed among others, the following overt acts:

1. On or about October 31, 2003, **OWENS** attempted to ship approximately $24,190 U.S. currency from a Staples Office Supply Store, located on Maple Avenue, Zanesville, Ohio, to a person unknown to the Grand Jury in the State of California.

2. On or about January 27, 2004, **OWENS** attempted to ship approximately $45,960 U.S. currency from a Wal-Mart Store, located at 2850 Maysville Pike, Zanesville, Ohio, to a person unknown to the Grand Jury in the State of California.

3. On or about February 10, 2004, **OWENS** possessed approximately $21,700 U.S. currency at LAX Airport, Los Angeles, California.

4. On or about September 25, 2004, **C.REMBLE** and a person known to the Grand Jury transported approximately 4 kilograms of cocaine, Xanax, and other nonprescribed drugs, from the State of California to the State of Ohio.

5. In or about October of 2004, **C.REMBLE, OWENS,** and

**ANDERSON** recruited **ATKINS** into their narcotics operation and sent **ATKINS** to Zanesville, Ohio for the purpose of distributing cocaine and cocaine base ("crack").

6. In or about September of 2004 through March of 2005, **OWENS, ANDERSON,** and **ATKINS** maintained an apartment at 1183 Wheeling Avenue, Zanesville, Ohio for the purpose of distributing cocaine and crack.

7. On or about January 10, 2005, **JW.JONES** used a rental vehicle for the purpose of distributing narcotics.

8. On January 31, 2005, **MARTIN** traded a Ford Mustang, VIN 1FAFP4048XF151844, for approximately 3 ounces of methamphetamine from **C.REMBLE**.

9. On or about February 2, 2005, **HOGSTEN** maintained a residence at 1806 North Avenue, Middletown, Ohio, for the purpose of allowing **C.REMBLE, J.REMBLE,** and **EVANS** to distribute narcotics.

10. On or about February 7, 2005, **J.REMBLE** sold an individual known to the Grand Jury an amount of methamphetamine at 1806 North Avenue, Middletown, Ohio.

11. On or about February 10, 2005, **LAWSON** contacted **CASSANOVA** via telephone and instructed **CASSANOVA** to retrieve and further distribute an amount of narcotics that **LAWSON** had hidden at a residence in Middletown, Ohio.

12. On or about February 11, 2005, **JW.JONES** possessed

6

approximately 28 grams of methamphetamine and a loaded Taurus 38 caliber firearm at Edwards Brothers Hall, located at 1300-B, 1st Avenue, Middletown, Ohio.

13. On or about February 11, 2005, **JW.JONES** contacted **CALDWELL** for the purpose of getting information to **C.REMBLE** and to inform **CALDWELL** that **JONES** had narcotics secreted at the location in which he resided.

14. On or about February 11, 2005, **JW.JONES** possessed approximately 53 grams of cocaine at his residence at 1990 Aaron Drive, Apartment E, Middletown, Ohio.

15. On or about February 12, 2005, **JW.JONES** contacted **EP.JONES** and discussed **EP.JONES** removing narcotics from her residence. **EP.JONES** told **JW.JONES** that she had already removed the narcotics from the residence.

16. On or about February 12, 2005, **JW.JONES** contacted **CALDWELL** to remove approximately 8 ounces of crack from a vehicle located at **CALDWELL'S** residence at 1303 Eaton Avenue, Middletown, Ohio.

17. On or about February 12, 2005, **EVANS** and **RICHARDS** entered a lease agreement for an apartment located at 2712 El Camino, Middletown, Ohio, for the purpose of maintaining a stash house for **C.REMBLE'S** narcotics operation.

18. On or about February 17, 2005, **EVANS** received a DHL

7

Express delivery package at 2712 El Camino, Middletown, Ohio, which contained approximately 10 quarter ounce baggies of methamphetamine which **EVANS** delivered to **MARTIN** and **WOODWARD**.

19. On or about February 17, 2005, **EP.JONES** met with **EVANS** and **RICHARDS** at a BP Gas Station, located at 1824 Oxford State Road, Middletown, Ohio, and gave **EVANS** and **RICHARDS** a backpack containing narcotics.

20. On or about March 10, 2005, **CASSANOVA** possessed an amount of methamphetamine and cocaine, digital scales, and a loaded Smith and Wesson 40 caliber firearm with laser sight.

21. On or about March 22 and 23, 2005, **COVINGTON** rented a room at the Comfort Inn, located at 500 Monroe Street, Zanesville, Ohio, for the purpose of distributing crack.

22. On or about March 24, 2005, **COVINGTON** possessed approximately 154.31 grams of crack, $5,814.33 U.S. currency, and a loaded Highpoint 9 mm semiautomatic pistol with ammunition.

23. On or about March 30, 2005, **C.REMBLE** and **MARTIN** discussed via telephone the distribution of methamphetamine and **MARTIN** paying **C.REMBLE** monies owed on a drug debt.

24. On or about March 30, 2005, **CALDWELL** contacted **MARTIN** to retrieve approximately $1,790 U.S. currency for **MARTIN'S** drug debt owed to **C.REMBLE**.

25. On or about March 30, 2005, **CALDWELL** possessed approximately 15 grams of methamphetamine.

26. On or about May 2, 2005, **COVINGTON** informed an individual

known to the Grand Jury that he carries a firearm and wears a bullet proof vest because he is a "gangsta".

27. On or about June 10, 2005, **OWENS** attempted to receive a package containing 1 kilogram of cocaine and 10 pounds of marijuana at 1856 Solera Drive, Columbus, Ohio.

28. On or about July 1, 2005, a person known to the Grand Jury leased a residence at 451 South 3rd Street, Coshocton, Ohio, at the request of **ALEXANDER** and **OWENS** for the purpose of distributing narcotics.

29. On or about July 11, 2005, **HOLT, CARTER,** and **MITCHELL** possessed approximately 87.65 grams of crack, an amount of marijuana, and approximately $6,500 U.S. currency at 451 South 3rd Street, Coshocton, Ohio.

All in violation of 21 U.S.C. § 846.

**Counts 2-10: Possessing, Manufacturing, Distributing, and Attempt Violations**

### COUNT 2

On or about February 7, 2005, in the Southern District of Ohio, defendant **JEFF REMBLE, a.k.a. "BABY",** did knowingly, willfully, intentionally, and unlawfully distribute an amount of methamphetamine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

### COUNT 3

On or about February 11, 2005, in the Southern District of Ohio, defendant **JOHN WAYNE JONES** did knowingly, willfully,

9

intentionally, and unlawfully possess with intent to distribute approximately 53 grams of cocaine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

### COUNT 4

On or about February 12, 2005, in the Southern District of Ohio, defendants **JOHN WAYNE JONES** and **JOYA CALDWELL** did knowingly, willfully, intentionally, and unlawfully possess with intent to distribute in excess of 50 grams of cocaine base ("crack"), a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

### COUNT 5

On or about March 10, 2005, in the Southern District of Ohio, defendant **JOHN CASSANOVA** did knowingly, willfully, intentionally, and unlawfully possess with intent to distribute an amount of methamphetamine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

### COUNT 6

On or about March 10, 2005, in the Southern District of Ohio, defendant **JOHN CASSANOVA** did knowingly, willfully, intentionally, and unlawfully possess with intent to distribute an amount of cocaine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

### COUNT 7

On or about March 30, 2005, in the Southern District of Ohio, defendant **JOYA CALDWELL** did knowingly, willfully, intentionally, and unlawfully possess with intent to distribute approximately 15 grams of methamphetamine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

### COUNT 8

On or about June 10, 2005, in the Southern District of Ohio, defendant **EARL OWENS, III, a.k.a. "EIGHT BALL"**, did knowingly, willfully, intentionally, and unlawfully attempt to possess with intent to distribute in excess of 500 grams of cocaine, a Schedule II Controlled Substance.

In violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).

### COUNT 9

On or about June 10, 2005, in the Southern District of Ohio, defendant **EARL OWENS, III, a.k.a. "EIGHT BALL"**, did knowingly, willfully, intentionally, and unlawfully attempt to possess with intent to distribute approximately ten (10) pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(D).

### COUNT 10

On or about July 11, 2005, in the Southern District of Ohio, defendants **JACORY MYSHAWN HOLT, a.k.a. "OC"**, **JEFFREY STEPHON CARTER, a.k.a. "J'GHOST"**, and **DARNELL JEROME MITCHELL, a.k.a. "KING D'NELL"**, did knowingly, willfully, intentionally, and unlawfully

possess with intent to distribute in excess of 50 grams of cocaine base ("crack"), a Schedule II Controlled Substance.

In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Counts 11-16: Maintaining a Place for the Purpose of Distributing Narcotics Violations.**

### COUNT 11

From in or about September of 2004 through March of 2005, in the Southern District of Ohio, defendants **EARL OWENS, III, a.k.a. "EIGHT BALL", CAESAR ANDERSON, a.k.a. "CJ"**, and **ANTWAIN ATKINS, a.k.a. "TWON"**, did knowingly and intentionally maintain a place, that being an apartment at 1183 Wheeling Avenue, Zanesville, Ohio, for the purpose of manufacturing, distributing, or using a Schedule II Controlled Substance, to wit: cocaine and cocaine base.

In violation of 21 U.S.C. § 856.

### COUNT 12

On or about February 2, 2005, in the Southern District of Ohio, defendant **ADONIA HOGSTEN** did knowingly and intentionally maintain a place, that being a residence at 1806 North Avenue, Middletown, Ohio, for the purpose of manufacturing, distributing, or using a Schedule II Controlled Substance, to wit: methamphetamine and cocaine.

In violation of 21 U.S.C. § 856.

### COUNT 13

On or about February 12, 2005, in the Southern District of Ohio, defendants **CARRIE EVANS** and **KRISTEN CIARA RICHARDS, a.k.a. "SNOW"**, did knowingly and intentionally maintain a place, that being an apartment located at 2712 El Camino, Middletown, Ohio, for the purpose of manufacturing, distributing, or using a Schedule II Controlled Substance, to wit:  methamphetamine.

In violation of 21 U.S.C. § 856.

### COUNT 14

On or about March 22-23, 2005, in the Southern District of Ohio, defendant **JAIME COVINGTON** did knowingly and intentionally maintain a place, that being that he rented a room at the Comfort Inn, located at 500 Monroe Street, Zanesville, Ohio, for the purpose of manufacturing, distributing, or using a Schedule II Controlled Substance, to wit:  cocaine base.

In violation of 21 U.S.C. § 856.

## COUNT 15

From on or about July 1 through July 11, 2005, in the Southern District of Ohio, defendants **JANET ALEXANDER, a.k.a. "JAN", EARL OWENS, III, a.k.a. "EIGHT BALL," JACORY MYSHAWN HOLT, a.k.a. "OC," JEFFREY STEPHON CARTER, a.k.a. "J'GHOST,"** and **DARNELL JEROME MITCHELL, a.k.a. "KING D'NELL,"** did knowingly and intentionally maintain a place, that being a residence at 451 South 3rd Street, Coshocton, Ohio, for the purpose of manufacturing, distributing, or using a Schedule II Controlled Substance, to wit:  cocaine base.

In violation of 21 U.S.C. § 856.

## COUNT 16

From on or about July 1 through July 11, 2005, in the Southern District of Ohio, defendants **JANET ALEXANDER, a.k.a. "JAN", EARL OWENS, III, a.k.a. "EIGHT BALL," JACORY MYSHAWN HOLT, a.k.a. "OC," JEFFREY STEPHON CARTER, a.k.a. "J'GHOST,"** and **DARNELL JEROME MITCHELL, a.k.a. "KING D'NELL,"** did knowingly and intentionally maintain a place, that being a residence at 451 South 3rd Street, Coshocton, Ohio, for the purpose of manufacturing, distributing, or using a Schedule I Controlled Substance, to wit:  marijuana.

In violation of 21 U.S.C. § 856.

**Count 17: Use of a Telephonic Communication to Further the Narcotics Possession/Distribution Operation Violation**

### COUNT 17

On or about February 12, 2005, defendants **JOHN WAYNE JONES** and **JOYA CALDWELL** did knowingly, intentionally, and unlawfully use a communication facility, that is a telephone, to facilitate the commission of a felony, that is, conspiracy to possess with intent to distribute cocaine and cocaine base, Schedule II Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

All in violation of 21 U.S.C. § 843(b).

**Count 18: Felon in Possession of Firearm Violations**

### COUNT 18

On or about March 10, 2005, in the Southern District of Ohio, the defendant, **JOHN CASSANOVA**, having been convicted of crimes punishable by imprisonment for a term exceeding one (1) year, that is Aggravated Possession of Drugs, in case number CR03-12-1916, and Attempted Possession of Drugs, in case number CR04-04-0592, in the Butler County Court of Common Pleas, Butler County, Ohio, did knowingly possess a firearm and ammunition in and affecting interstate commerce, to wit: a Smith & Wesson, Sigma model, .40 caliber pistol, serial number PBR4303, and ammunition which had been shipped in interstate commerce.

All in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## **FORFEITURE ALLEGATIONS**

### **(COUNTS 1 & 16)**

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Counts 1 through 16, the defendants shall forfeit to the United States:

    (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and

    (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

### **Substitute Assets**

If any of the above-described forfeitable property, as a result of any act or omission of the defendants,

    1.    cannot be located upon the exercise of due diligence;

    2.    has been transferred or sold to, or deposited with, a third person;

    3.    has been placed beyond the jurisdiction of the Court;

    4.    has been substantially diminished in value; or

    5.    has been commingled with other property which cannot be subdivided without difficulty:

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated in Title 18, United States Code 982 by 18 U.S.C. § 982(b)(1), to seek

forfeiture of any other property of said defendants up to the value of the above forfeitable property.

                                                    **A True Bill.**

                                                    /s/
                                            Grand Jury Foreperson

GREGORY G. LOCKHART
United States Attorney

RALPH W. KOHNEN
Deputy Criminal Chief

17