## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:05-cr-113-1 |
| Plaintiff, | : | CHIEF JUDGE BECKWITH |
| -vs- | : | |
| CLARENCE REMBLE, | : | |
| Defendant. | : | |

## MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT

Now comes Defendant, Clarence Remble, by and through counsel, and respectfully moves this honorable Court, to suppress any and all evidence seized as the result of the search warrant executed on or about July 27, 2005 at 469 West Raymond Street, Compton, California.  The warrant was issued without probable cause, in violation of Mr. Remble's constitutional rights.  This Motion is supported by the attached Memorandum in Support.

Respectfully submitted,

SIRKIN, PINALES & SCHWARTZ LLP

 /s/ Candace C. Crouse
MARTIN S. PINALES (Ohio Bar No.  0024570)
CANDACE C. CROUSE (Ohio Bar No. 0072405)
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone (513) 721-4876
Facsimile (513) 721-0876

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      Statement of Pertinent Facts:**

On July 21, 2005, Defendant, Clarence Remble, was indicted by the Federal Grand Jury for the Southern District of Ohio.  Mr. Remble was one of twenty people charged with a drug conspiracy.  On July 26, 2005, Agent Peter Lakes swore out an affidavit for a search warrant to search two homes in Compton, California.  One of the homes is the residence of Clarence Remble, located on 469 West Raymond Street, Compton, California.  The fruits of that search include large sums of money, and other items that the government contends are connected with the drug conspiracy.     In his affidavit, Agent Lakes states that on November 21, 2001, officers seized a package sent to M. Cobene at 466 W. 19th Street, San Pedro, California, from a man named Theopolis Niles, a Zanesville resident, who is currently in prison for a narcotics offense.  The package contained $21,150 hidden inside tennis shoes. Search Warrant Affidavit at 7 (attached).

Agent Lakes also learned from Detective LeCocq of the Muskingham County Sheriff's Department in Zanesville, Ohio that on December 13, 2002, detectives were advised by a confidential informant (CS1) that Niles received a package of cocaine from a source of supply in San Pedro, California, specifically two individuals identified by CS1 as M. Cobene and "Smoke." *Id.* at 8.  CS1 also identified Niles as a member of the Dodge City Crips Gang.  *Id.*  No further information on CS1's reliability was provided nor was the identity of Smoke and Cobene provided.

Agent Lakes also stated that on or about October 31, 2003, police seized $24,190 from Earl Owens, who Lakes contends is also known as "Chris Owens" and "C. Owens."  *Id.* On January 27, 2004, a package containing $45,960 was seized from Owens when he tried to send it from Zanesville to Latrice Dillingham on Rush Avenue in Bellflower, California.  *Id.* at 8-9. Another $21,700 was

2

seized from Owens on February 10, 2004 at the Los Angeles International Airport. *Id.* at 9.

According to Agent Lakes, between November 8 and November 10, 2004, Owens sent a $1000 money order to Maurnisha Cobene and a $1000 money order to Clarence Remble at 1402 W. 163rd St., Compton, California. *Id.* Two additional money orders of $1000 each were sent to the same address to Marquis Remble. On December 3, 2004, four money orders were sent by Owens to the same address and addressed to Derrick Braggs. *Id.* at 10. According to an incident report prepared by the Ohio Highway Patrol, on September 25, 2004, Braggs and Clarence Remble were stopped by a Ohio Highway Patrol Officer and were found to be in possession of 4 kg of cocaine. Braggs stated that the drugs were his and was later convicted. Without any explanation, Agent Lakes makes the blanket conclusion that Braggs is a member of the Dodge City Crips and is Remble's subordinate. *Id.*

On March 24, 2005, Jamie Covington was stopped by Sheriff's Deputies in Zanesville. A search of the vehicle revealed a large amount of crack cocaine. It was later learned that Covington stored over $5,000 at a Comfort Inn in Zanesville. *Id.* at 10-11.

Another confidential informant (CS2) stated that Caesar Anderson and Jamie Covington are members of the Dodge City Crips Gang and were sent with other gang members from California to the Southern District of Ohio to distribute narcotics on behalf of Remble. *Id.* at 11. Agent Lakes does not state anything about the reliability of CS2. Instead, he simply states that Covington, Anderson, and Remble were indicted by the Federal Grand Jury on July 21, 2005.

Agent Lakes states that on March 30, 2005, Detective LeCocq learned from Gene King of the U.S. Postal Service that on that day, Janet Alexander came into the post office and purchased $2,500 in money orders and left. *Id.* at 11-12. LeCocq stated that the vehicle she drove was

3

registered to her husband, Gary Alexander, who is currently in prison for a drug trafficking violation. *Id.* at 12. King advised that Janet Alexander had purchased similar money orders at other post office locations in the area. *Id.* Agent Lakes assumed that the money orders were sent to California since Owens had sent money orders to California. *Id.* at 13.

Through contacts with the Torrence, California Police Department, Agent Lakes learned that Owens is a member of the Dodge City Crips gang and is a close associate of Clarence Remble. *Id.* Agent Lakes did not elaborate further on this assertion.

Agent Lakes learned from U.S. Postal Inspector, Jodie Carr, that money orders totaling $5500.00 were purchased at the Middletown, Ohio Post Office and sent from Zanesville to 625 Mesa Street, San Pedro, California. *Id.* at 14. They were cashed by someone named Paul Denzin. *Id.*

Agent Lakes also learned that on March 30, 2005, Joya Caldwell, who resides in Middletown, Ohio, was sent by Clarence Remble to the home of CJ Martin to collect monies owed for a drug debt. *Id.* Later that day, Caldwell returned to Martin's residence and delivered fifteen grams of methamphetamine at the direction of Remble. *Id.* Agent Lakes did not explain how he came to know this information. If Joya Caldwell gave him the information, he did not try to substantiate if it was reliable. Rather, Agent Lakes states that Caldwell and Martin have been indicted by the Federal Grand Jury.

Through a public information source, Agent Lakes determined that Maurnisha Cobene resides at 469 W. Raymond St., Compton, California and that Clarence Remble lives at the 1402 W. 163rd Street address. *Id.* at 14-15 .[1]  Agent Lakes reported that on July 20, 2005 officers observed Remble at the West 163rd Street address and noted a high volume of activity, such as visitors only

---

[1] Remble actually resided at the 469 W. Raymond Street address.

staying for a short period of time.  *Id.* at 15. Based on his training, he believed the house was being used as a stash house, because "'stash houses' have frequent visitors, usually staying for short periods of time." *Id.*  Based on these observations and the volume of money orders going to this address, Agent Lakes believed that the residence was being used as a stash house by Mr. Remble and his associates. *Id.*

Agent Lakes characterized as "suspicious activity" that officers saw Remble leave 469 W. Raymond Street in a vehicle that was parked in front of the residence since the previous night. *Id.* at 16.

**II.   Argument:**

**A.     The Search Warrant Was Not Supported By Probable Cause:**

The Fourth Amendment to the United States Constitution, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Fourth Amendment mandates that "no warrants shall issue but upon probable cause," which must be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States* (1948), 333 U.S. 10.

This Court's review of whether there was sufficient probable cause to search Mr. Remble's residence is limited to the four corners of the search warrant application and the affidavit.  *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).  *Gates* adopted a "totality of the circumstances" test to determine the sufficiency of probable cause in an affidavit in support of a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay

5

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238-39.

"The probable cause requirement of the Fourth Amendment is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted into believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Besase*, 521 F.2d 1306 (6th Cir. 1975). The issuing judge is not required to determine whether the offense charged has in fact been committed, but he is concerned only with the question of whether there are reasonable grounds to believe at the time of the affidavit that the law had been violated on the premises to be searched. *Id.* at 1308-09.

Even after the *Gates* Court adopted the flexible "totality-of-the-circumstances" test, it nonetheless provided examples of cases which even under the new test, "illustrated the limits beyond which a magistrate may not venture in issuing a warrant." *Id.* at 239. One example to which the Court pointed was when the warrant was based upon a "wholly conclusory statement" which provided the magistrate with no basis at all for making an informed judgment. *Id.* This was the nature of the problem confronted by the Court in *Aguilar v. Texas*, 378 U.S. 108 (1964). However, even under the totality of the circumstances test, an officer's probable cause statement that "affiants have received reliable information from a credible person and do believe that heroin is stored in the home," would be insufficient to provide the magistrate judge with probable cause to issue the warrant. *Id.*

Furthermore, another decision of the Court that survived the adoption of the totality of the

6

circumstances test was *Nathanson v. United States*, 290 U.S. 41 (1933).  In *Nathanson*, the Court held that the affiant's sworn statement that "he has cause to suspect and does believe that liquor illegally brought into the United States is housed on certain premises" did not constitute probable cause because it was a wholly conclusory statement which failed to provide the magistrate with a substantial basis upon which to issue the warrant.  Even under the new totality of the circumstances test, the Court in *Gates* noted that the affidavit in *Nathanson* would be insufficient; to rule otherwise would mean that the magistrate's determination would have improperly been a "mere gratification of the bare bones conclusion of others." *Gates*, 462 U.S. at 239.

Although the affiants in both *Aguilar* and *Nathanson* alluded to their information as being "reliable," the affidavits lacked any indicia of specificity or corroboration to buoy such a bald claim. As the Court in *Gates* made clear, these deficiencies are not to be ignored under the totality of the circumstances test.  Additionally, corroborative police efforts are a necessary requirement even under the totality of the circumstances regime.

The *Gates* Court held the following two factors were significant for issuing courts to evaluate in determining whether an anonymous informant's tip constituted probable cause: (1) an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand;" and (2) the extent to which the tip was corroborated by the police officer's own investigation. *Id.* at 244.

The Sixth Circuit wrestled with this issue in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000).  In *Allen*, the *en banc* court ruled that: "where a known person, named to the magistrate, to *whose reliability an officer attests with some detail*, states that he has seen a *particular crime and particular evidence*, in the recent past, a neutral and detached magistrate may believe that evidence

of a crime will be found." *Id.* at 976 (emphasis added). Therefore, an affidavit which includes a tip from a named informant *that has been proven reliable* may support a finding of probable cause in the absence of any corroboration. *Id.* (emphasis added). Conversely, an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, *only if it includes sufficient corroborating information. United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)(emphasis added). Both the reliability and basis of knowledge of the informant as well as police corroboration are critical issues that the affiant must address in his search warrant affidavit.

In the case *sub judice*, the affidavit does not establish sufficient probable cause. The information concerning Theopolis Niles was stale. In determining whether a probable cause finding is stale, a court must consider the following: "the defendant's course of conduct; the nature and duration of the crime; the nature of the relevant evidence; and any corroboration of the older and more recent information." *United States v. Czuprynski*, 46 F.3d 560, 567 (6th Cir.1995). The alleged activities occurred more than three years prior to the affidavit and concerned an address in San Pedro, California, which was not alleged to be Remble's current or past residence. Furthermore, there are no further allegations in the affidavit that Cobene or Remble were involved in mailing narcotics to any other individuals.

In addition to the Theopolis Niles information being stale, the information provided by the confidential informant concerning the source of a package of cocaine sent to Niles in 2002 is not alleged to be reliable and is not corroborated. Agent Lakes failed to: 1) state how long officers knew the confidential informant; 2) whether that informant was reliable; 3) whether that informant ever provided any information in the past and to whom he/she provided the information; and 4) chronicle

any investigation that members of law enforcement had completed in order to corroborate the information provided by the confidential informant. Agent Lakes also fails to identify who "Smoke" is alleged to be. Earlier in the affidavit, Agent Lakes states that Remble is also known as "The General." *Id.* at 6. The basis of knowledge of Niles' membership with the Dodge City Crips is also not discussed. Accordingly, the issuing magistrate should not have relied upon this information in his probable cause determination.

The information concerning the large amounts of money seized from Earl Owens does nothing to further a finding of probable cause that evidence of a drug conspiracy would be found at 469 W. Raymond Street. In addition, the fact that money orders were sent to 1402 W. 163rd St. does not further a finding that evidence of a drug conspiracy would be found at 469 W. Raymond Street. There must be a nexus connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit. *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005).

Remble's association with Braggs is certainly not sufficient to establish probable cause to search his home, especially considering that Agent Lakes states that Braggs said the drugs found in his car were his and was subsequently convicted. Agent Lakes again makes a wholly conclusory statement that Braggs is a gang member and is Remble's subordinate.

Agent Lakes relies on a second confidential informant who states that Rembles sent other gang members, including Covington and Anderson, to the Southern District of Ohio to distribute drugs. Once again, the information is not alleged to be reliable and is not corroborated.

Agent Lakes attempts to show the reliability of this information by stating that Remble, Covington, and Anderson were indicted by the Federal Grand Jury on July 21, 2005. In fact, Agent

9

Lakes reiterates the fact that Remble has been indicted for a drug conspiracy throughout his affidavit. However, the mere fact that Remble had been indicted in a drug conspiracy some days earlier does not establish sufficient probable cause to search his home. *See United States v.* Chesher, 678 F.2d 1353, 1363 (9th Cir. 1982)(citing *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970)("[I]t can not follow in all cases, simply from the existence of probable cause to believe a suspect is guilty, that there is also probable cause to search his residence.")).

Agent Lakes' assumption that Janet Alexander mailed numerous money orders to California is again a wholly conclusory statement. The belief or conclusion of the affiant, without presentation of the facts to the magistrate upon which the conclusion is based, is constitutionally an insufficient basis upon which the magistrate may determine the existence of probable cause. *See Nathanson*, 290 U.S. at 41.

Agent Lakes also did not elaborate on the information provided by the Torrence, California Police Department that Owens is a member of the Dodge City Crips and a close associate of Remble. While observations of fellow law enforcement officers are typically considered to be reliable, *see United States v. Ventresca*, 380 U.S. 102, 111 (1965), Agent Lakes should not be permitted to circumvent established case law by relying on wholly conclusory statements by other law enforcement agencies. At a minimum, Agent Lakes should have included facts to support such a conclusion.

Agent Lakes then states that he learned from another law enforcement officer that Joya Caldwell, another co-defendant, was sent by Remble to CJ Martin's home to collect drug money and later returned to deliver 15 grams of methamphetamine at Remble's direction. Agent Lakes does not state whether this information was learned from Caldwell herself, another confidential informant,

10

or from surveillance of Caldwell by law enforcement. Yet again, Agent Lakes fails to establish reliability and basis of knowledge of the informant, as well as police corroboration.

Curiously, Agent Lakes characterizes as "suspicious activity" that officers saw Remble leave 469 W. Raymond Street in a vehicle that was parked in front of the residence the previous night. Unlike the 1402 W. 163rd Street residence, Agent Lakes did not even state that officers observed a high volume of traffic at the Raymond Street residence.

The search warrant was defective because the affidavit did not set forth probable cause to believe that evidence of the drug conspiracy would be found at the 469 W. Raymond Street residence.

**B.     The Good-Faith Exception Under *United States v. Leon* Does Not Apply.**

If this Court determines that there was not sufficient probable cause to issue the search warrant, it must next determine whether to apply the "good faith exception" to the exclusionary rule, which was carved out by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 922 (1984). In *Leon*, the Court held that even when a search warrant affidavit does not establish probable cause, the evidence resulting from the search will not be suppressed if the officers acted in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *Id.* at 918-23. It is the government's burden to demonstrate that the officer acted in good faith reliance in executing an invalid search warrant. *See United States v. George,* 975 F.2d 72, 77 (2nd Cir. 1992); *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (1996).

The *Leon* Court identified four scenarios where the good faith exception would be inappropriate and suppression of evidence would nonetheless be required:

(1) if the issuing magistrate was misled by information in an affidavit that the affiant

> knew was false or would have known was false except for his reckless disregard for the truth; (2) the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; and (4) if the warrant was facially deficient in that it failed to particularize a place to be searched or the things to be seized.

*Leon*, 468 U.S. at 914-15. The third exception applies in this case. Agent Lakes' affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon's* good-faith inquiry is confined to an objective standard. *Id.* at 920. Consequently, Agent Lakes' subjective good faith is irrelevant; instead, *Leon* demands that a police officer's reliance upon a search warrant be objectively reasonable. The critical inquiry in determining whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n.23. "[T]he good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Laughton*, 409 F.3d at 752.

In this case, a reasonably well-trained officer would know that even under the totality of the circumstances test, there must be some showing that the confidential informants are reliable. In order to determine this, the affiant must detail why he believes that his sources are reliable so that the issuing court may judge the wisdom of that belief. Agent Lakes failed to make even a conclusory statement that the informants were reliable. Furthermore, the affidavit was a "bare bones" affidavit, containing numerous conclusory statements and even relying on stale information. An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances

12

regarding veracity, reliability, and basis of knowledge is a "bare hones" affidavit. *Aguilar*, 378 U.S. at 114. The numerous deficiencies of the affidavit were detailed above and do not need to be repeated. However, it does bear repeating that the glaring nature of these deficiencies makes any reliance on the warrant by a "well-trained" officer unreasonable. In every sense of the phrase, the affidavit prepared by Agent Lakes was a "bare bones" affidavit because of its conclusory nature thereby rendering suppression appropriate under the third exception to the *Leon* rule. *See e.g. United States v. Weaver*, 99 F.3d 1372, 1380-81 (6th Cir. 1998).

III.   **Conclusion:**

For the foregoing reasons, Defendant, Clarence Remble, respectfully moves this Court to suppress any and all evidence seized as the result of the search warrant executed on or about July 27, 2005 at 469 West Raymond Street, Compton, California. Mr. Remble further moves this Court to suppress all direct and indirect evidence that the government obtained as a consequence of its unreasonable search and seizure as such evidence is "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

Respectfully submitted,

SIRKIN, PINALES & SCHWARTZ LLP


 /s/ Candace C. Crouse
MARTIN S. PINALES (Ohio Bar No.  0024570)
CANDACE C. CROUSE (Ohio Bar No. 0072405)
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone (513) 721-4876
Facsimile (513) 721-0876

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via electronic mail on Kenneth L. Parker, Assistant United States Attorney, Cincinnati, Ohio, on this 12th day of January, 2006.

/s/ Candace C. Crouse
CANDACE C. CROUSE (Ohio Bar No. 0072405)