```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR-1-05-113-1 |
| | : | **GOVERNMENT'S CONSOLIDATED** |
| | : | **RESPONSE TO DEFENDANT'S** |
| v. | : | **MOTIONS TO SUPPRESS** |
| | : | **(DOCS. 222 & 277)** |
| | : | |
| CLARENCE REMBLE | : | Chief Judge Beckwith |

- - - - - - - - - - - - - - - - - - - - - - -

Now comes the United States, by and through counsel, and hereby respectfully requests that this Court deny both of defendant Clarence Remble's Motions To Suppress the items received during the search of 469 West Raymond Street, Compton, California (Docs. 222 & 277). The following memorandum will sufficiently set forth the facts and circumstances in this case surrounding the search as well as provide pertinent case law in support of a denial of each of the motions.

**MEMORANDUM**

I.  **STATEMENT OF FACTS**

In support of the affidavit for the search warrant for 469 West Raymond Street, Compton, California, Federal Bureau of Investigation Special Agent Peter Lakes averred that the affidavit was based on personal knowledge and information received from a host of resources including Detectives of the Muskingum County Sheriff's Department, the Middletown Police Department, the Columbus Police Interdiction Unit, the Ohio State

Highway Patrol, members of the Ohio Intensity Drug Trafficking Area (HIDTA) Package Interdiction Unit, the Torrance Police Department, the United States Postal Service, the Los Angeles California Police Department, a fellow FBI Special Agent in California, and two confidential sources (one of which incriminated him/herself in criminal activities with the organization with which Remble is a member).  Additionally, Agent Lakes advised that he has extensive training and experience in investigating narcotics trafficking organizations.  Based on his training and experience, Agent Lakes specified that the items to be seized pursuant to the search included narcotics and contraband used in the drug trade as well as items that are indicia of long term operations such as log books, financial records, receipts, banking records, emails, photographs, travel schedules, etc.  Also, Agent Lakes advised that the search would include seizing items which are commonly used by drug traffickers such as electronic equipment such as pagers, cellular telephones, and video equipment.  The search warrant and affidavit is attached.

In the affidavit, Agent Lakes averred that law enforcement agencies had been investigating the narcotics trafficking activities of a number of individuals in the Zanesville, Middletown, and Coshocton, Ohio areas since November of 2001. Agent Lakes indicated that agencies determined that the gist of

their local narcotics problems were being created by members and associates of a Los Angeles based gang known as the "Dodge City Crips" (hereinafter the "Crips Organization"). Specifically, Agent Lakes averred that the Crips Organization was establishing cell operations in Ohio to import, stash, and distribute cocaine, crack cocaine, methamphetamine, marijuana, and other illegal narcotics. Furthermore, Agent Lakes averred that the investigation revealed that members and associates of the Crips Organization utilized the postal service to send the proceeds of the drug sales back to their cohorts in California. Ultimately, Agent Lakes noted that the investigation determined that Clarence Remble, Earl Owens, and Maurnisha Cobene were integral parts of enterprise.

Agent Lakes averred that in November, 2001 law enforcement officers seized a package being sent to an "M. Cobene" in San Pedro, California, from an individual named Theopolis Niles in Zanesville, Ohio. Agent Lakes submitted that the package contained approximately $21,150 U.S. currency which was hidden inside the soles of tennis shoes. While conducting a check on the current whereabouts of Niles, Agent Lakes determined that Niles was subsequently convicted of a narcotics trafficking offense and is serving a prison sentence in Ohio.

Agent Lakes averred that detectives with the Muskingum County Sheriff's Department were working with a confidential

source (CS1) who knew more details concerning packages being sent to Niles before his incarceration. Agent Lakes advised that the Muskingum County Sheriff's Detective informed him that on or about December 13, 2002, CS1 informed the Muskingum County Sheriff's Detective that Niles received a package of cocaine in Zanesville, Ohio, from a source of supply in San Pedro, California. Agent Lakes averred that CS1 specifically indicated that the package was sent under the name "M. Cobene". CS1 indicated that Cobene and an individual known as "Smoke" as the persons who sent the cocaine to Niles. Also, Niles was identified by the detective as a member of the Crips Organization.

Agent Lakes averred that the Muskingum County Sheriff's Detective informed him that the detective learned that the Columbus Police Interdiction Unit, in conjunction with the Zanesville Police Department, seized approximately $24,190 U.S. currency from an individual named Earl Owens on October 31, 2003. Through the continued investigation of Owens, Agent Lakes determined that Owens is a member of the Crips Organization and a close associate of Clarence Remble.

Agent Lakes averred that the Muskingum County Sheriff's Detective provided him with information that another $45,960 U.S. currency was seized during a package interdiction on or about January 27, 2004, in Zanesville, Ohio. The detective indicated

4

that Owens was also identified as the shipper of the package which was intended for a "Latrice Dillingham" in Belleflower, California. The detective also informed Agent Lakes that within two weeks of the package interdiction which resulted in a seizure of $45,960 U.S. currency, Owens was stopped and found to be in possession of $21,700 U.S. currency at the Los Angeles International Airport.

Agent Lakes averred that, after the package interdiction and the stop of Owens which resulted in the seizure of more than $65,000, the Muskingum County Sheriff's Department Detective provided information that postal money orders were being used by members and/or associates of the Crips Organization as a means of sending proceeds from Zanesville, Ohio to California. Specifically, Agent Lakes advised that the money orders were being sent by Owens who used the aliases "Chris Owens" and "C. Owens". The money orders were being sent to Maurnisha Cobene, Clarence Remble, and Marquis Remble at 1402 West 163rd Street, Compton, California. Agent Lakes also determined that Maurnisha Cobene and Clarence Remble had received and cashed the money orders sent by Owens. Checking into Marquis Remble, Agent Lakes averred that he had been informed by a confidential source that (1) the source had been personally involved in criminal activities with the Crips Organization and (2) Marquis Remble is Clarence Remble's son.

The Muskingum County Sheriff's Detective also provided Agent Lakes information that four more postal money orders totaling $3,000 were sent under the alias of "Chris Owens" to an individual named Derrick Braggs at the same Compton, California address as the money orders sent to Cobene and Marquis and Clarence Remble. The money orders were sent on December 3, 2004. Agent Lakes averred that Braggs received and cashed the money orders two days later.

Agent Lakes learned that, nine months after the money orders were sent to Derrick Braggs, the Ohio State Highway Patrol conducted a traffic stop and determined that Braggs and Clarence Remble were the occupants of the vehicle. During the stop, the patrolmen seized four kilograms of cocaine. Also, Agent Lakes averred that the highway patrolmen reported that Braggs is a member of the Crips Organization and seemed to be a subordinate to Clarence Remble. The patrolmen reported that Braggs stated that the cocaine was his. Braggs was subsequently convicted of narcotics possession.

Agent Lakes advised that on March 24, 2005, Muskingum County Sheriff's Deputies arrested a member of the Crips Organization named Jaime Covington in Zanesville, Ohio. At the time of his arrest, Covington possessed a firearm and a large amount of crack cocaine. Subsequent to Covington's arrest, Agent Lakes averred that the general manager of a local motel provided law

enforcement officers with Covington's belongings.  Law enforcement officers discovered a large amount of currency in Covington's property.

Agent Lakes advised that on March 30, 2005, an employee of the United Postal Service reported to the Muskingum County Sheriff's Department unusual purchasing activities of an individual named Janet Alexander.  Agent Lakes averred that the investigation revealed that Alexander had purchased postal money orders totaling $7500 from three separate post offices in Zanesville, Ohio, within a short period of time on the same day. Agent Lakes intimated that he had knowledge that Alexander was an associate of the Crips Organization and made and averment that he believed that the money orders were sent to California.

Agent Lakes noted that he dealt with a second confidential source of information (CS2) who implicated him/herself in the criminal dealings of the Crips Organization.  Agents Lakes indicated that CS2 informed law enforcement officials that Covington and an individual named Caesar Anderson were members of the Crips Organization and had been sent, with other gangs members, to Ohio from California at the direction of Clarence Remble.

Additionally, Agent Lakes indicated to the Court information that he received directly from a United States Postal Inspector and detectives of the Middletown Police Department. Specifically,

Agent Lakes advised the Court that a U.S. Postal Inspector informed him that a number of money orders totaling over $5,000 were purchased in the Middletown, Ohio area, mailed from Zanesville, Ohio, and cashed in San Pedro, California. A detective of the Middletown Police Department informed Agent Lakes that Middletown law enforcement authorities determined that, on March 30, 2005, Clarence Remble had directed an individual named Joya Caldwell to collect monies owed from a prior drug debt from an individual named CJ Martin. Apparently, Caldwell was arrested when she returned to deliver 15 grams of methamphetamine to Martin. The detective informed Agent Lakes that Caldwell brought the methamphetamine at Remble's direction.

On July 8, 2005, Agent Lakes averred that he caused Choicepoint Online to query Maurnisha Cobene and Clarence Remble. Agent Lakes submitted that Choicepoint Online returned a result that indicated that Maurnisha Cobene resides at 469 West Raymond Street and Remble resides at 1402 West 163rd Street, both in Compton, California.

Agent Lakes then contacted FBI Special Agent K.W. Wong of California to conduct surveillance on the locations. Agent Wong provided information that Clarence Remble was observed at the West 163rd Street location. Agent Wong also submitted information to Agent Lakes that there was a high volume of activity at the West 163rd Street location which caused the agent

to believe that the location was being used as a "stash house" or source of distribution for narcotics.  Agent Wong observed that Remble also had a connection to the 469 West Raymond Street location – the residence listed by Choicepoint Online for Maurnisha Cobene.  In fact, Agent Wong relayed information to Agent Lakes that Remble's vehicle remained at the West Raymond location overnight.

    Agent Lakes attested to the court that he has ten (10) years of law enforcement experience with the Federal Bureau of Investigation.  Agent Lakes acknowledged that he is part of the Southwestern Ohio Regional Drug Task Force.  This assignment requires, but is not limited to, that he investigate individuals involved in narcotics trafficking.  Agent Lakes noted that he has received numerous hours of classroom training in the area of narcotics investigations, including training at the FBI Academy, the Organized Crime Drug Enforcement Task Force Training, and Asset Forfeiture Financial Investigations II Seminar.  Agent Lakes submitted that he has participated in investigations of narcotics traffickers for over 4 years.  He submitted that such investigations required the use of search warrants to which was has been the affiant and supervising confidential informants.  Agent Lakes acknowledged that his work in narcotics cases has resulted in numerous arrests for narcotics offenses against the United States.  Based on his knowledge, training, and experience,

as well as the investigation of the defendant, Agent Lakes averred that he believed that contraband and other items indicative of long-term narcotics trafficking would be located at West 163rd and 469 West Raymond Streets, Compton, California.

Finally, Agent Lakes indicated that on July 21, 2005, the investigation into the narcotics activities of Remble and a number of other members and associates of the Crips organization resulted in a federal indictment in the Southern District of Ohio.

Taking into account the totality of the circumstances as presented in the affidavit and finding that there was probable cause, Central District of California Magistrate Judge Paul Game, Jr. issued a search warrant for the 469 West Raymond Street, Compton, California, address on July 26, 2005.

Law enforcement officers executed the search at 469 West Raymond Street, Compton, California.  During the search, the agents seized numerous cellular telephones, items used to wrap money, small glass vials, scales, miscellaneous paperwork, items used to package narcotics, documents identified for Maurnisha Cobene, and disposable cameras.

**II. The Affidavit To Search The 469 West Raymond Street, Compton California Address Contained Sufficient Probable Cause.**

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. Specifically, the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV.

When determining probable cause, the court must make such a conclusion based upon the "totality of the circumstances." <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983). Furthermore, the reasoning employed when reviewing the totality of the circumstances is by answering a "commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." <u>Gates</u>, 462 U.S. at 230. An affidavit presented for a determination of probable cause is judged on the adequacy of what it contains, not what it lacks or could have contained. <u>United States v. Allen</u>, 211 F.3d 970, 975 (6th Cir. 2000)(*en banc*). A court reviewing a previous determination of probable cause must give that conclusion great deference. <u>Id.</u> at 973.

This case is clearly distinguishable for the facts of <u>Aquilar v. Texas</u>, 378 U.S. 108 (1964), *rev'd on other grounds* by <u>Gates</u>, *supra,* and <u>Nathanson v. United States</u>, 290 U.S. 41 (1933). The affidavit in <u>Aquilar</u> was scant, indicating only that "[a]ffiants have received reliable information from a credible person and do believe [evidence is] being kept at the [listed]

11

premises...." See Aquilar, 378 U.S. at 109. No other evidence was presented to the court. Likewise, the affiant in Nathanson only averred to the court that he had "cause to suspect and does believe that certain merchandise... is not deposited and contained within the premises [to be searched]. Nathanson, 290 U.S. at 44.

The affidavit provided by Agent Lakes is replete with information which shows that FBI Special Agent Lakes had more than a mere affirmance of belief or suspicion when he sought to search the West Raymond Street location. Moreover, contrary to the defendant's insinuation that Agent Lakes placed his thumb on the information provided by CS1 and CS2, Agent Lakes' investigatory resources were vast and consisted of a host of reliable and credible law enforcement officials. Also, Agent Peter Lakes attested to having 10 years experience in law enforcement with a number of those years being dedicated to investigating narcotics traffickers.

During the investigation, Agent Lakes determined that the Crips Organization had a continuous ongoing narcotics enterprise between the States of California and Ohio. Agent Lakes advised the court of facts that connected events of the Crips Organization from at least 2001 to 2005. Agent Lakes indicated that Clarence Remble, Earl Owens, and an "M. Cobene" which could

reasonably be determined to be Maurnisha Cobene as integral parts of that enterprise.

Contrary to the defendant's assertion that the information regarding Theopolis Niles is stale, he fails to understand that information one may consider old is relevant in cases of continuous illegal activities. Such is the case here. There is no bright line rule determining staleness of information. Moreover, staleness is not determined by some arbitrary time limitation for which facts must be presented to a court, but through an assessment of the facts in their proper context within a particular time period. See United States v. Canan, 48 F.3d 954, 959 (6th Cir. 1995); United States v. Henson, 848 F.2d 1374, 1382 (6th Cir. 1988). Accordingly, information which demonstrates a chain of related events concerning a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists. Henson, 848 F.2d at 1382.

Agent Lakes clearly connected Theopolis Niles's activities to the more recent events in his averments. First, package containing $21,150 U.S. currency, Niles sent in 2001 was intended for an "M. Cobene" the same recipient that Owens later used. Second, the package was sent from a Zanesville, Ohio location to a location in San Pedro, California. Third, the location in San Pedro was the same location that Derrick Braggs, who was found to

be in possession of 4 kilograms while with Remble, used to receive postal money orders.  Fourth, Niles is a member of the same Crips Organization as Remble, Braggs, and Owens.  Fifth, Niles was convicted of narcotics trafficking and is currently serving time.  Sixth, CS1 also advised law enforcement officers that Niles also received a package of cocaine in Zanesville, Ohio from a location in San Pedro, California.  Finally, CS1 identified an "M. Cobene" as the sender of the cocaine.  After connecting Niles up, Agent Lakes further detailed the pattern of criminal activities being carried on by Earl Owens, Joya Caldwell, CJ Martin, Derrick Braggs, Jaime Covington, and Janet Alexander which all was connected to Clarence Remble.

Agent Lakes could accept CS1 and CS2's information as having an indicia of reliability since they both provided not only information regarding the criminal activity of the Crips Organization, but CS2 also admitted being involved in some of the criminal activities of the organization.  Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause.  United States v. Harris, 403 U.S. 573, 583 (1971).  The confidential sources of information were not anonymous.  Moreover, they could be easily located and prosecuted based on their admissions.  Indeed, such statements against their

penal interests with the possibility of prosecution render them more reliable then the average informant.

Also, the information Agent Lakes provided regarding Earl Owens, Derrick Braggs, Jaime Covington, Caesar Anderson, Joya Caldwell, C.J. Martin, and Janet Alexander only strengthens the determination that (1) there was a continuous narcotics distribution pipeline between California and Ohio and (2) Clarence Remble, Earl Owens, and Maurnisha Cobene were integral parts of that pipeline.

Although Agent Lakes indicated that the West 163rd Street residence was the location that "M. Cobene", and essentially Clarence Remble, used to receive money orders, he determined through Choicepoint Online that Maurnisha Cobene, a possible unindicted co-conspirator, was listed as residing at 469 West Raymond Street.  Corresponding with FBI Special Agent K.W. Wong, Agent Lakes furthered his investigation into the activities of Remble in California.  K.W. Wong assisted Agent Lakes and conducted surveillance on both the West 163rd and West Raymond Street locations.  K.W. Wong informed Agent Lakes that there was such a high level of "short visits" to the West 163rd Street location that it apparently was being used as a drug distribution center.  Agent Lakes averred to this in his affidavit.  Agent Wong indicated that Remble was observed at both the West 163rd and the West Raymond locations.  The surveillance of Remble was

not fleeting either as Agent Wong noted that Remble's vehicle remained at the Raymond address overnight.

Agent Lakes appropriately applied his knowledge, training, and experience in narcotics investigations when he maintained that there was a reasonable likelihood that a number of the items to be seized in the search would be found at the West Raymond Street location. While Remble may assert that there was nothing mentioned in the affidavit that connected him to the identity of the individual referred to as "Smoke", there was plenty of evidence that Maurnisha Cobene, whom a reasonable connection to the reference "M. Cobene", as being a receiver of the packages from Zanesville, Ohio. Moreover, even if Agent Lakes failed to establish the exact location of Remble's home address, he averred in paragraph 19 that the West Raymond Street address was determined to be the primary residence of Cobene (who may be just an unindicted co-conspirator in this case). In other words, Remble's assertion that he also lives at the West Raymond Street location does nothing to negate the probable cause to search the residence that was established which indicated a significant involvement in the criminal activity by Maurnisha Cobene.

In the end, Agent Lakes' belief that evidence and fruits of the criminal activity would be found at the West Raymond Street location was reasonable. Moreover, courts have upheld such an assessment based on the officer's investigation, training, and

experience to be reasonable and proper. See <u>United States v. Caicedo</u>, 85 F.3d 1184, 1193 (6th Cir. 1996) ("reasonable to defer" to officer's assessment of probability of finding drug paraphernalia in defendant's home, where officer had spent numerous years in law enforcement with a number of those years investigating narcotics traffickers); <u>United States v. Davidson</u>, 936 F.2d 856, 860 (6th Cir. 1991) (stating that "a magistrate judge is permitted to draw reasonable inferences about where the evidence is likely to be kept based on the nature of the evidence and the type of the offense."); <u>United States v. Rosenbarger</u>, 536 F.2d 715, 719 (6th Cir. 1976) (concluding that the nexus between the place to be searched and the items to be seized may be established by the nature of the items and normal inferences as to where a person would keep such items); <u>See</u> <u>also</u> <u>United States v. Robinson</u>, 96 F.3d 1149, 1996 WL 506498, *1, **4 (6th Cir. Sept. 5, 1996) (upholding a magistrate judge's finding of probable cause based on the officer's conclusion that, based on his training and experience, evidence of narcotics trafficking would be found in the defendant's home even though none of the incidents spelled out in the affidavit were specifically tied to the defendant's residence); <u>United States v. Jones</u>, 994 F.2d 1051, 1055-56 (3rd Cir. 1993) (opining that it is reasonable to conclude that it is likely to find evidence of a crime in the home of the perpetrator).

Remble would have this Court look at the affidavit in isolated bits and pieces with a hypertechnical microscope. However, <u>Gates</u> and <u>Allen</u>, <u>supra</u>, dictated against this approach, urging that we asked ourselves a commonsense practical question while reviewing the "totality of the circumstances." Remble's assertion that the investigation into the individuals he attempted to insulate himself with did not reveal that there would be a likelihood that evidence of criminal activity would be found at the West Raymond Street location is meritless. Moreover, to accept it would be tantamount to accepting that the investigation did not reveal a reasonable likelihood that he was even involved in the criminal activity.

Finally, while it is generally understood that the items seized during the execution of a search warrant are technically irrelevant to probable cause, the fact that a number of the items seized were averred to in the affidavit confirms that Agent Lakes did not act like Officer Francis B. Laughlin in <u>Nathanson</u> and merely "guess" when he sought the warrant in this case.

**III. Although We Acknowledge <u>United States v. Leon</u>, 468 U.S. 897 (1984), We Maintain That A Finding On Its Reasoning Is Not Necessary Because The Affidavit Is More Than Sufficient.**

Even arguendo that the warrant was somehow deficient, the "good-faith" exception of <u>United States v. Leon</u>, 468 U.S. 897, 905 (1984), should apply in this case. <u>Leon</u>, 468 U.S. at 905.

18

The rationale of Leon is that the evidence need not be suppressed when it is obtained through objective good faith reliance on a facially valid warrant even if that warrant is later found to lack probable cause. In Leon, the Court reasoned that the good faith exception to the exclusionary rule should apply because suppressing evidence would not assist law enforcement officers in making any better assumptions that they were acting within the law. Thus, an officer handed a warrant under these circumstances cannot be expected to second-guess the judgment of the issuing judge as to his or her finding of probable cause.

Remble's assertion that the affidavit is so lacking in an indicia of probable cause as to render official belief in its existence unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit, is also without merit. Moreover, the affidavit is anything but "bare bones" and Remble's attempt to consider it as such evidences his hypertechnical myopic viewpoint. Accordingly, the principles of Leon also call for a denial of Remble's motion to suppress.

**CONCLUSION**

Based on the facts and circumstances of this case, the Court should deny both of the defendant's motions to suppress.

    Respectfully submitted,

    GREGORY G. LOCKHART
    United States Attorney


    s/Kenneth L. Parker
    KENNETH L. PARKER (0068805)
    Assistant United States Attorney
    Attorney for Plaintiff
    221 East Fourth Street, Suite 400
    Cincinnati, Ohio  45202
    (513) 684-3711
    Fax:  (513) 684-2047
    Kenneth.Parker @usdoj.gov


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing "Government's Consolidated Response To Defendant's Motions To Suppress" was served this 8th day of February, 2006, electronically on Martin S. Pinales and Candace C. Crouse, Attorneys for Defendant Clarence Remble.

    s/Kenneth L. Parker
    KENNETH L. PARKER (0068805)
    Assistant United States Attorney