```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

```
United States of America     )
                             )
            Plaintiff,       )  Case No. 1:05-CR-113-001
                             )
     vs.                     )
                             )
Clarence Remble,             )
                             )
            Defendant.       )
```

O R D E R

This matter is before the Court on motions to suppress filed by Defendant Clarence Remble (Doc. Nos. 222 & 277). For the reasons that follow, Defendant's motions are not well-taken and are **DENIED**.

On July 21, 2005, the grand jury returned a seventeen count indictment (Doc. No. 1) which charged twenty defendants with a variety of drug trafficking offenses. Count 1 of the indictment charged Defendant Clarence Remble with conspiracy to possess with intent to distribute and to distribute in excess of 50 grams of methamphetamine, in excess of 50 grams of cocaine base, in excess of 500 grams of cocaine, and an amount of marijuana, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), (b)(1)(B), and (b)(1)(D), and 21 U.S.C. § 846. On October 19, 2005, the grand jury returned a superseding indictment (Doc. No. 213) which added an eighteenth count

charging co-Defendant John Cassanova with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In general, Count 1 alleges that Defendant participated in a conspiracy to transport narcotics from California into the Southern District of Ohio and to transport drug proceeds from the Southern District of Ohio back to California.

On November 2, 2005, Defendant filed pro se a barebones motion to suppress (Doc. No. 222). Later, on January 12, 2006, Defendant's trial counsel filed a supplemental and substantive motion to suppress. Both motions, however, are directed to a warrant obtained by the Federal Bureau of Investigation subsequent to the return of the original indictment to search two residences in Compton, California, 1402 West 163rd Street ("the West 163rd Street residence") and 469 West Raymond Street ("the West Raymond Street residence"). In his motion, Defendant argues that on its face, the affidavit in support of the search warrant was insufficient to establish probable cause to search the West Raymond Street residence. Defendant further contends that the affidavit was so lacking in probable cause that the good faith exception to the exclusionary rule does not apply. Defendant, therefore, moves the Court to suppress any evidence recovered by the agents at the West Raymond Street residence.

It is well-settled that in seeking suppression of

evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.  United States v. Feldman, 606 F.2d 673, 679 n. 11 (6th Cir. 1979).  As indicated, the Defendant argues that the agents recovered evidence at the West Raymond Street residence in violation of his rights under the Fourth Amendment because the affidavit in support of the search warrant did not establish probable cause for the warrant to be issued.

      The probable cause standard is a "practical, non-technical conception."  Illinois v. Gates, 462 U.S. 213, 231, (1983)(quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).  Probable cause "has repeatedly been defined in terms of the facts and circumstances known to the officers at the time of the search."  United States v. Pasquarille, 20 F.3d 682, 685 (6th Cir. 1994)(citing United States v. Nigro, 727 F.2d 100, 103 (6th Cir. 1984)(en banc)).  "The test for probable cause is simply whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Padro, 52 F.3d 120, 123 (6th Cir. 1995)(quoting Gates, 462 U.S. at 238.  Such a probability must be "supported by less than prima facie proof but more than mere suspicion."  United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).

      In Gates, the Supreme Court explained the duties of the issuing magistrate and the reviewing court in determining whether

probable cause exists to issue a search warrant. Gates, 462 U.S. at 238-39. The issuing magistrate must apply a "totality-of-the-circumstances" test to probable cause issues. Id. at 238. This test requires the magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," that probable cause exists. Id. The reviewing court, in turn, must yield "great deference" to the issuing magistrate. Id. at 236. United States v. Leake, 998 F.2d 1359, 1363 (6th Cir. 1993). The reviewing court's role is limited to "ensur[ing] that the magistrate had a 'substantial basis' for concluding that probable cause existed." Gates, 462 U.S. at 238-39. Finally, in determining whether probable cause existed, the reviewing court is limited to reviewing the information contained within the four corners of the affidavit. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005).

      The affidavit in question was completed and signed by F.B.I. Special Agent Peter Lakes and submitted for approval to Magistrate Judge Paul Game, Jr. of the United States District Court for the Central District of California on July 26, 2005. Doc. No. 336, Ex. 1. After identifying the places to be searched and the items to be seized pursuant to the warrant, the affidavit describes the background of the investigation. Agent Lakes

4

states that an investigation conducted in cooperation with the Muskingum County Sheriff's Department and the Middletown, Ohio Police Department revealed that members of a Los Angeles-based gang called the Dodge City Crips established cells in the Southern District of Ohio for the purpose of distributing cocaine, crack cocaine, methamphetamine, and marijuana.  The gang members and their associates would then return proceeds of drug sales to California using United States Postal Service Money Orders.  Agent Lakes then states that the investigation showed that the Defendant, Earl Owens, and Maurnisha Cobene are integral members of this drug trafficking organization.  The affidavit then informs the magistrate judge that on July 21, 2005 the Defendant and Earl Owens, among other members of the Dodge City Crips, were indicted for conspiracy to distribute controlled substances in the Southern District of Ohio.

       The next section of the affidavit describes a series of incidents in which police officers intercepted large sums of cash being sent from Ohio to California by members of the Dodge City Crips, or in which gang members purchased money orders and mailed them from Ohio to California.  Earl Owens, using the name "Chris Owens" or "C. Owens," was responsible for mailing several of the money packages intercepted by the police.  Owens mailed a number of money orders to the West 163rd Street residence and on one occasion the Defendant cashed one of the money orders at

5

Washington Mutual Bank.  On a different occasion, money orders sent by Owens to the West 163rd residence were cashed by Derrick Braggs, who was known to the investigators as a member of the Dodge City Crips.  About three months before Braggs cashed these money orders, the Ohio Highway Patrol stopped Braggs and the Defendant along Interstate 70 in Preble County, Ohio.  The state troopers found four kilograms of cocaine in the car which Braggs admitted to owning.

Agent Lakes then relates an incident from March 2005 when Muskingum County Sheriff's Deputies discovered a large quantity of crack cocaine and a handgun during a traffic stop of Jaime Covington.  The deputies also recovered approximately $5,800 in cash from Covington's hotel room.  Agent Lakes states that he learned through a confidential source that Covington was a member of the Dodge City Crips and was distributing narcotics in the Southern District of Ohio on behalf of Remble.  Agent Lakes also indicated that Covington had been indicted for drug trafficking by the federal grand jury in the Southern District of Ohio.

Agent Lakes then describes a series of money order purchases made by Janet Alexander, who, along with the Defendant, he earlier identified as a person who had been indicted by the federal grand jury for drug trafficking.

Agent Lakes then states that in the course of his

6

investigation he learned from the Torrance, California police department via Detective Birk of the Middletown Police Department that Earl Owens is a known member of the Dodge City Crips and a close associate of the Defendant's.  Agent Lakes also states that he learned from Detective Birk that on or about March 30, 2005 the Defendant sent Joya Caldwell to collect a drug debt from a C.J. Martin.

      Next, Agent Lakes informs Magistrate Judge Game that he performed a public information search through Choicepoint Online and learned that Maurnisha Cobene resided at the West Raymond Street residence and that the Defendant resided at the West 163rd Street residence.  Finally, F.B.I. Special Agent K.W. Wong observed activity at the West 163rd Street residence that was consistent with drug trafficking.  Agent Wong observed the Defendant at this residence.  Agent Wong also observed the Defendant leave the West Raymond Street residence in a car that had been parked in front of the residence since the previous night.  Agent Lakes concluded that based on his experience and training, and from the volume of money orders sent to that address, that the Defendant was using the West 163rd Street residence as a "stash house" for drug trafficking activities. Agent Lakes also indicates that he knows from his training and experience that drug dealers often keep records, proceeds, electronic devices, and other indicia of trafficking in their

7

homes.

Although the affidavit in support of the search warrant is not without its weaknesses,[1] on the whole it provided a sufficient basis for the magistrate judge to conclude that there was probable cause for the agents to search the West Raymond Street residence for evidence of drug trafficking activity. While some of the incidents described in the affidavit preceded the application for the search warrant by as much as four years, staleness of information is not significant where, as in this case, there is evidence of ongoing criminal activity.[2] <u>United States v. Greene</u>, 250 F.3d 471, 481 (6th Cir. 2001).

There was substantial information in the affidavit connecting Defendant with drug trafficking activity. Based on information provided by, <u>inter alia</u>, the Torrance Police Department, the affidavit established that Defendant had a close connection with Earl Owens and the Dodge City Crips. In turn, the affidavit detailed three separate incidents in which the

---

[1] For instance, the affidavit never indicates whether the confidential sources had provided reliable information in the past. In another section, the affidavit describes a mailing of money orders from Zaneville, Ohio to a man named Paul Denzin in San Pedro, California without connecting this shipment to the Defendant.

[2] In this case, the various shipments of cash to California as well as the series of transactions involving the purchase and sending of money orders to California reasonably believed to be proceeds from drug trafficking is an example of ongoing criminal activity.

police seized in excess of $20,000 in cash from Owens. The large sums of cash is evidence of a connection with drug trafficking. See, e.g., United States v. $67,220, 957 F.2d 280, 285 (6th Cir. 1992)("[C]arrying a large sum of cash is strong evidence of some relationship with illegal drugs."). Additionally, on a number of occasions, Owens mailed money orders from Ohio to the West 163rd Street residence, which Agent Lakes identified as the Defendant's home and at which Agent Wong identified conduct consistent with drug trafficking occurring. Lamping v. Walraven, 30 Fed. Appx. 577, 578-80 (6th Cir. 2002)(heavy traffic of short term visitors to house indicative of drug trafficking); United States v. Artez, 389 F.3d 1106, 1114 (10th Cir. 2004)(same). Furthermore, the Defendant's indictment for allegedly participating in a drug trafficking conspiracy in the Southern District of Ohio was an additional factor indicating that there was probable cause to issue the search warrant. United States v. Apker, 705 F.2d 293, 303 (8th Cir. 1983)(return of indictment by grand jury sufficient probable cause to issue search warrant)(abrogation on other grounds recognized by Wabun-Inini v. Sessions, 900 F.2d 1234 (8th Cir. 1990)).³ The Court also notes that the Defendant's alleged

---

³ In United States v. Chesher, 678 F.2d 1353, 1363 (9th Cir. 1982), the Court held that issuance of an indictment alone is insufficient to establish probable cause for a search warrant. The panel in Chesher, however, specifically limited its holding to the facts of the case before it, which involved a RICO indictment. In contrast, in this case, the indictment supplements the other evidence submitted in support of the search

gang membership is probative of participation in a conspiracy. United States v. Butler, 71 F.3d 243, 251 (7th Cir. 1995). Finally, once there was evidence to demonstrate the Defendant's probable participation in drug trafficking there was probable cause to search his residence because drug dealers are likely to conceal evidence where they live. United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002). Indeed, Agent Lakes averred in his affidavit that based on his training and experience he knows that drug traffickers conceal evidence in their residences.

In sum, as the Court stated during oral argument on this motion, the affidavit consists of many small dots of information which do not all connect together with each other but do point to the Defendant's participation in a drug trafficking conspiracy. Moreover, the affidavit also establishes that the residences in question were likely to be places where evidence of drug trafficking would be found. There was a substantial basis for the magistrate judge to conclude that probable cause existed to issue this search warrant.

Even if the search warrant was technically insufficient, the exclusionary rule would not prohibit the introduction of evidence obtained pursuant to it. The exclusionary rule does not bar the government's introduction of

---

warrant application and was not the sole basis for the magistrate judge's decision.

evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated.  United States v. Leon, 468 U.S. 897, 918-21 (1984). The Leon Court identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.  Id. at 914-23.

  In this case, there is no evidence that the affidavit was based on false information or that the magistrate judge abandoned his role as a neutral arbiter of the sufficiency of the affidavit.  The warrant is not deficient on its face.  The affidavit is not barebones.  Rather, the affidavit contains enough information that a reasonable officer would believe that it was properly issued.  The affidavit reasonably indicates that the Defendant was a participant in a drug trafficking conspiracy and that the residences in question were likely to conceal evidence related to the conspiracy.  Therefore, even assuming

11

that the affidavit does not establish probable cause on its face, the good faith exception to the exclusionary rule would still require the Court to overrule Defendant's motion to suppress.

Accordingly, for the reasons stated, Defendant's motion to suppress is not well-taken and is **DENIED**.

      **IT IS SO ORDERED**


Date  February 22, 2006          s/Sandra S. Beckwith
                                          Sandra S. Beckwith, Chief Judge
                                           United States District Court