**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  09a0375n.06

No(s)  06-3909 & 07-3106

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 26, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| CAESAR ANDERSON   (06-3909) | ) | **O P I N I O N** |
| CLARENCE REMBLE,   (07-3106) | ) | |
| | ) | |
| *Defendants-Appellants.* | | |

BEFORE:     KENNEDY, NORRIS, and COLE, Circuit Judges.

**COLE, Circuit Judge**.  Defendants-Appellants Caesar Anderson and Clarence Remble appeal their sentences for conspiracy with intent to distribute in excess of 50 grams of methamphetamine, in excess of 50 grams of cocaine base ("crack"), in excess of 500 grams of cocaine, and an amount of marijuana in violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(A). Anderson was sentenced to 120 months' imprisonment, and Remble was sentenced to life imprisonment.  Remble appeals his conviction on the grounds of alleged violations of his Fourth Amendment and due process rights, and appeals his sentence on the basis of the district court's alleged misapplication of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Anderson appeals his sentence, arguing that the district court improperly sentenced him to the mandatory minimum of ten years for violating 21 U.S.C. § 846 and that he received ineffective assistance of counsel.  For the reasons set forth below, we **AFFIRM** Remble's conviction and

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

Anderson's sentence, but **VACATE** Remble's sentence and **REMAND** to the district court for resentencing.

## I.  BACKGROUND

The instant case arises from a large drug conspiracy, involving the transport of drugs from California into the Southern District of Ohio and the transport of drug proceeds from the Southern District of Ohio back to California.  In 2000, Earl Owens ("Owens") began traveling from California to Zanesville, Ohio, to sell crack cocaine.  Later, Owens and his long-time friend, Clarence Remble ("Remble"), set up a joint operation in Ohio whereby Remble would send powder cocaine from California to various cities in Ohio, where Owens would process the powder cocaine into crack for resale.  Owens and Remble would then split the profits from the sale evenly.

On October 31, 2003, law enforcement officers were made aware of the drug ring after employees at a Staples office-supply store in Zanesville became suspicious of a package being shipped via UPS by Owens.  Given that UPS does not ship cash, suspicions were heightened when an employee opened the package to inspect it and discovered that it contained a large amount of cash.  Employees called the Zanesville City Police, who then performed a "dog sniff."  The dog alerted to the scent of drugs.  The police thereupon called the United States Postal Inspectors to take control of the package.  On January 27, 2004, the Zanesville police once again intercepted a suspicious package mailed by Owens from Zanesville to California, containing large amounts of money bundled in black rubber bands.  Law enforcement discovered that other packages and money orders had been sent by Owens and various members of the conspiracy from Zanesville to Remble,

- 2 -

*Nos.  06-3909 & 07-3106*
*USA v. Anderson*

Maurnisha Cobene, Derrick Braggs, and Marquis Remble, at 469 West Raymond Street and 1402 West 163rd Street in Compton, California.

In November 2004, Remble began to supply his co-conspirator, John Wayne Jones, with crack, xanax, and methamphetamine.  Jones was a known drug dealer in Middletown, Ohio. Thereafter, Remble sold crack and methamphetamine to other members of the conspiracy:    Justin Lawson, John Cassanova, C.J. Roland Martin, John Woodward, and Adonia Hogsten for personal use and distribution in Middletown, Ohio.

In December 2004, Remble approached co-conspirator Jamie Covington about traveling from California to Zanesville to sell crack.  In January 2005, Covington traveled to Zanesville by bus where he met Owens and Remble's cousin, Jeff Remble.  Owens found Covington an apartment where he could distribute drugs and provided him with a half ounce of crack to sell.  Two days after Covington arrived in Zanesville, Remble arrived at his apartment and inquired into the amount of money he was making selling drugs.

Another co-conspirator, Antwain Atkins, testified that he was living in Los Angeles, California when he agreed to travel to Zanesville by bus to sell drugs. Owens and Caesar Anderson picked him up from the bus station in Zanesville and took him to an apartment.  The next day, Owens gave Atkins crack to sell.  A month after Atkins's arrival in Zanesville, Remble approached him and instructed him about selling drugs.  During the conspiracy, Remble gave Atkins a half ounce of crack to sell.

Remble also recruited co-conspirator Caesar Anderson to travel from California to Ohio to sell drugs.  In Ohio, Owens provided Anderson with a residence for the selling of drugs.  Initially,

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

Owens provided Anderson with one quarter ounce of crack cocaine to sell. Anderson lived in Ohio for approximately six weeks before returning to California.

On July 21, 2005, following the arrests of various members of the conspiracy on drug charges, a federal grand jury issued a sealed indictment against the members of the conspiracy, including Remble and Anderson. On July 5, 2006, a jury convicted Remble of conspiracy to possess with intent to distribute in excess of 50 grams of methamphetamine, in excess of 50 grams of cocaine base ("crack"), in excess of 500 grams of cocaine, and an amount of marijuana in violation of Title 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). Remble was held responsible for 15 kilograms of crack distributed by Owens and approximately 1,116.38 grams of methamphetamine that he distributed to various members of the conspiracy. Remble also received a four-point enhancement for his role as a leader in the conspiracy, and a two-point enhancement for obstruction of justice. Remble was also found to be a career offender. On January 18, 2007 the district court sentenced Remble to a term of life imprisonment.

Anderson pleaded guilty to conspiracy to possess with intent to distribute in excess of 50 grams of methamphetamine, in excess of 50 grams of crack, in excess of 500 grams of cocaine, and an amount of marijuana in violation of Title 21 U.S.C. § 846. On June 21, 2006, the district court sentenced Anderson to a term of 120 months' imprisonment.

On appeal, Remble challenges his conviction, arguing that the district court erred in denying his motion to suppress evidence obtained as a result of a search warrant for his residence, and improperly admitted evidence depicting his children with drug proceeds, evidence of his past membership in gangs and threats made against a witness, which he alleges created an unfair

- 4 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

prejudice against him.  Remble also challenges the reasonableness of his life sentence.  Anderson,

likewise, challenges his sentence, arguing that the district court improperly sentenced him to the

mandatory minimum of ten years for violating 21 U.S.C. § 846 and that he received ineffective

assistance of counsel during sentencing.

## II.  ANALYSIS

### A.  Remble's Conviction

We review a district court's factual findings regarding a motion to suppress for clear error

and its legal conclusions de novo. *United States v. Watson*, 498 F.3d 429, 430-31 (6th Cir. 2008).

On appeal, we must determine whether, in light of the totality of the circumstances, the magistrate

judge had a "substantial basis" for concluding that evidence of a crime or contraband would be found

at the place to be searched.  *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)  (quoting

*United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).  Remble argues that the affidavit

supporting the search warrant did not support a finding of probable cause because: (1) it relies almost

entirely on unreliable and conclusory hearsay from other law enforcement; (2) it relies on stale

information, including information concerning large amounts of money seized from Owens, and

information about Theopolis Niles (not a party to this conspiracy) from 2001; and (3) it provides no

information about the reliability of the confidential informant or other law enforcement officers, who

are the primary source of the statements that incriminated Remble.  We disagree.

Here, Special Agent Peter Lakes's affidavit detailed information which, in light of the totality

of the circumstances, provided the magistrate judge with a substantial basis for concluding that

evidence of a crime or contraband would be found at Remble's 469 West Raymond Street residence.

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

In particular, the affidavit contained evidence linking that residence to ongoing criminal activity. Even if certain information were stale, recent information corroborating the otherwise stale information may be taken into account during the probable cause analysis where, as here, the place to be searched is linked to ongoing continuous criminal activity. *See United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (holding that "recent information corroborates otherwise stale information" in an affidavit and that "time is of less significance" where the "affidavit recites activity indicating protracted or continuous conduct"). Moreover, detailed truthful information of suspicious or criminal activity that is obtained from reliable police investigations and which link the place to be searched to criminal activity, as here, may also support a finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 242-46 (1983) (finding that probable cause existed where the anonymous tip contained specific, predictive information, which officers were able to corroborate through investigation); *see also United States v. Gregory*, No. 07-5624, 2009 WL 415994, at *7 (6th Cir. Feb. 19, 2009) (finding that probable cause existed where the affidavit identified six law enforcement officers with whom the officer-affiant communicated, described in detail the suspicious activity occurring over several years at the place to be searched, and relayed the substance of the officer-affiant's communications with fellow named officers).

In the affidavit, Agent Lakes averred that he spoke with various officers involved in a multi-jurisdiction investigation of Remble and others in the conspiracy on a daily basis and detailed his own efforts to corroborate the officers' information. Lakes also averred, among other things, that from February 2005 to the date of the affidavit, he was in contact with Detective Mike LeCocq of the Muskingum County Sheriff's Department in Zanesville. From weekly conversations with

*Nos.  06-3909 & 07-3106*
*USA v. Anderson*

LeCocq, Lakes stated that he learned that on October 31, 2003 and January 27, 2004, Muskingum

County Sheriff's Department seized $24,190 and $45,960 respectively from Earl Owens.  He also

learned that on November 8, 2004, two money orders each in the amount of $1,000.00 were sent

from "Chris Owens" or "C. Owens" of 923 Curtis Street, Zanesville to Maurnisha Cobene and

Clarence Remble, respectively, at the 163rd Street premises.  Then on December 3, 2004, four

money orders were sent from "Chris Owens" of 923 Curtis Street to Derrick Braggs at the West

163rd Street premises.  Later, Lakes read an incident report by the Ohio Highway Patrol dated

September 25, 2004, and learned that on that date Derrick Braggs and Remble were stopped by the

Ohio Highway Patrol and found to be in possession of four kilograms of cocaine and other drugs.

Lakes also stated that, on or about July 8, 2005, he learned through a Choicepoint Online query that

Cobene resided at 469 West  Raymond Street, and Remble resided at the West 163rd Street

premises.  Lakes also detailed information from March 2005 when Muskingham County Sheriff's

deputies discovered a large quantity of crack cocaine and a handgun during a traffic stop of Jamie

Covington.  The deputies then recovered $5,800 in cash when they searched Covington's hotel room.

Agent Lakes stated that he learned through a confidential source that Covington was distributing

drugs in Ohio on behalf of Remble. On July 26, 2005, he learned from FBI Agent K.W. Wong that

on that day law enforcement officers saw Remble leaving the 469 West Raymond residence in a

vehicle that had been parked in front of that address since the previous night.

Because of the unexplained money found in the hotel and the drugs found in the car, along

with the other information about Remble's connection to Owens and Braggs, the repeated nature of

the transactions, and the information linking the 469 West Raymond Street address to the suspicious

- 7 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

activities, the magistrate judge had a substantial basis for concluding that Remble was engaged in

ongoing drug trafficking, and by extension, that evidence of illegal activity would be found at his

residence. *See United States v. Laughton*, 409 F.3d 744, 747-49 (6th Cir. 2005) (determining that

probable cause may exist to search the residence of a suspected drug dealer where there is a

"connection between the residence to be searched and the facts of criminal activity that the officer

set out in [the] affidavit"); *see also United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998)

(concluding that probable cause to search the residence of a suspected drug dealer existed where he

engaged in two recorded transactions outside of his residence because "[i]n the case of drug dealers,

evidence is likely to be found where the drug dealers live").

Moreover, the affidavit, twelve pages in length, is not so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable. The district court properly

concluded, therefore, as an alternative basis for its ruling, that denial of the suppression motion was

justified under the good faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984).

*See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (finding *Leon* exception

applicable where affidavit facts, albeit insufficient to establish probable cause, "were not so vague

as to be conclusory or meaningless").

**B. District Court's Admission of Evidence**

Next, Remble contends that the district court erred by (i) admitting certain photographs and

a video depicting his son and step-son in the presence of large bundles of cash, (ii) admitting

evidence of his association with a gang, and (iii) admitting testimony that Remble had attempted to

bribe a witness, Antwan Atkins, into not testifying at trial. We review the district court's "decision

- 8 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

to admit relevant, but potentially prejudicial, evidence" for abuse of discretion.  *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988).  Even if the trial court abused its discretion in admitting evidence, the defendant is not entitled to reversal of his conviction if admission of the evidence was harmless under Rule 52 (a) of the Federal Rules of Criminal Procedure.  *Schrand v. Fed. Pac. Elec., Co.*, 851 F.2d 152, 157 (6th Cir. 1988).  In considering whether the erroneous admission of evidence is harmless, we consider "the likelihood that the error affected the outcome of the case," including "the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected and the centrality of that issue to the ultimate decision."  *Id.* (quoting *Jordan v. Medley*, 711 F.2d 211, 218-19 (D.C. Cir. 1983)) (citations omitted).

At trial, the district court admitted photographs and video of Remble's son and step-son because they either: (1) were generated on a phone subscribed to by Remble; (2) depict the kitchen table at 469 West Raymond Street, an address connected to Remble; (3) permitted the witnesses to identify the children, demonstrating that they personally knew Remble; and (4) depict unexplained cash wrapped in black rubber bands, which are purportedly proceeds of drug sales from the Ohio area.  Because that evidence was introduced to prove that Remble played a role in the conspiracy, not to cast aspersions on his character, the evidence was properly admitted.  *See United States v. Hester*, 140 F.3d 753, 759-60 (8th Cir. 1998) (upholding the admission of photographs of defendant's minor children in the presence of narcotics and weapons).  The risk of unfair prejudice was particularly slight as the Government did not emphasize the minor children's association with the drug conspiracy such that it became a central issue of the case.  In any event, given the

- 9 -

*Nos.  06-3909 & 07-3106*
*USA v. Anderson*

overwhelming evidence linking Remble to the conspiracy, there is little chance that the admission of the photographs or video unduly prejudiced the defense.

The district court also did not err in permitting Atkins to testify that Remble, during prison church services, attempted to bribe Atkins into not testifying at trial.  Atkins's testimony was admissible under Rule 404(b) of the Federal Rules of Evidence.  We have held that "[t]hough not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt," but that such evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (per curiam).  Here, Atkins's testimony was probative because it was an attempt to establish Remble's connection to and role in the conspiracy.  The fact that the alleged bribery attempt took place during church meetings was necessary to explain how, where, and why these co-conspirators were able to meet in one location. Notably, Remble did not threaten Atkins and the prosecutor did not overtly link the fact that Remble attempted to bribe someone in a church to his bad character.  Whatever harm was done by linking the bribe to church services, it did not so unfairly prejudice Remble that its probative value was outweighed.  Further, any error was harmless because there was overwhelming evidence of Remble's guilt.

Finally, Remble argues that the district court abused its discretion by admitting evidence of his association with the Dodge City Crips.  This Court has held  that "evidence of gang affiliation is admissible to establish the defendant's opportunity to commit a crime, [*United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996)], or where the interrelationship between people is a central issue

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

in the case, *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)," *United States v. Tolbert*, 8

F. App'x 372, 378-79 (6th Cir. 2001), but is inadmissible if there is no connection between the gang

evidence and the charged offense, *United States v. Hendrix*, No. 94-1404, 1995 WL 218472, at *3

(6th Cir. Apr. 12, 1995). Even if the trial court abused its discretion in admitting gang evidence,

however, a defendant is not entitled to reversal of his conviction if admission of the evidence was

harmless. *See Schrand*, 851 F.2d at 157.

Assuming arguendo that the district court erred in admitting the evidence of Remble's

association with the Dodge City Crips, we cannot find that the error warrants reversal of Remble's

conviction. Any such error was harmless because Remble's gang affiliation was not central to the

prosecution's case and the other testimony establishing Remble's guilt was so overwhelming that

the contested evidence could not have affected the outcome of the trial. *See Gibbs*, 182 F.3d at 430.

**C. Remble's Sentence**

*1. Career Offender Status*

Remble contends that since his parole for both felony offenses, which occurred outside the

fifteen-year time period for career offender status, was revoked at the same time and for the same

conduct, only one of those sentences should be counted, and, therefore, he should not be classified

as a career offender. The United States Sentencing Guidelines Manual Section 4B1.1(a) designates

a defendant as a career offender if: (1) the defendant was at least 18 years old at the time of the

instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled

substance offense; and (3) the defendant has at least two prior felony convictions of either a crime

of violence or a controlled substance offense. A prior conviction counts if imprisonment exceeding

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

one year and one month was imposed within fifteen years of the defendant's commencement of the instant offense. U.S.S.G. § 4A1.2(e)(1). "A prior conviction also is counted when any prior sentence of imprisonment exceeding one year and one month, whenever imposed, . . . resulted in the defendant being incarcerated during any part of such fifteen-year period." *United States v. Shannon*, 449 F.3d 1146, 1148 (11th Cir. 2006) (quoting U.S.S.G. § 4A1.2(e)(1)) (internal quotation marks omitted). "In the case of a prior revocation of probation . . . [or] parole . . . [the sentencing court should] add the original term of imprisonment to any term of imprisonment imposed upon revocation." *Id.* (quoting U.S.S.G. § 4A1.2(k)(1)). Thus, a conviction that is imposed resulting in a sentence of imprisonment for thirteen months or more, and on which the defendant is paroled outside the fifteen-year window, is counted for the purposes of career offender status if the defendant is later incarcerated within the fifteen-year window for breaching the conditions of his parole. *Id.* ("[T]he court ordinarily should count a conviction that is imposed, and on which the defendant is paroled, outside the window, when the defendant later--within the window--is incarcerated for breaching the conditions of his parole.") (quoting *United States v. Cornog*, 945 F.2d 1504, 1510 (11th Cir. 1991)); *see also United States v. Parson*, 288 F.3d 818, 821 (6th Cir. 2002) (same). Here, if we add the additional time sentenced from Remble's 1992 parole revocation (resulting incarceration of approximately 28 months) to the 1982 conspiracy to commit robbery offense, and the 1995 revocation (resulting incarceration of approximately 22 months) to the 1984 robbery offense, we are of the view that Remble was incarcerated for both offenses for more than thirteen months within the applicable fifteen-year period of this offense. Accordingly, the district court did not err in determining that Remble qualifies as a career offender.

- 12 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

### 2. Calculation of Remble's Base Offense Level

Remble contends that the district court erroneously calculated his base offense level to be 38. In particular Remble maintains that the district court improperly determined that he was responsible for in excess of 15 kilograms of crack. The Government responds that contrary to Remble's argument, the testimony elicited at trial provided a sufficient basis from which the district court could conclude that Remble was responsible for the amount determined. A district court's drug-quantity determination is a factual finding that we review for clear error. *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004). If the exact amount of drugs is undetermined, "an estimate will suffice, but . . . a preponderance of the evidence must support the estimate." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990); *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000) ("Approximations are completely appropriate."). Generally, a defendant involved in a drug-conspiracy is responsible for the drug quantities for which he is directly involved, and any quantity that is a reasonably foreseeable consequence of the conspiracy. *United States v. Caver*, 470 F.3d 220, 246 (6th Cir. 2007). However, the district court must make individualized findings for each member of the conspiracy regarding the scope of the conspiracy and the duration and nature of each conspirator's participation. *United States v. Carter*, 45 F.App'x 339, 352 (6th Cir. 2002).

Here, the district court did not err in determining that a preponderance of the evidence shows that Remble could reasonably foresee that Owens would convert the powder cocaine into crack for resale. At trial, Atkins testified that Remble dispatched him to Ohio to sell drugs and he described a direct buy of crack from Remble in Zanesville. Covington testified that Remble sent him to

- 13 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

Zanesville to sell drugs, that he sold crack, and that Remble told him Zanesville was a good place

to make money, implying that Remble was aware that Zanesville was a good place to sell crack.

Owens also testified that although Remble was unaware that Owens was converting the powder

cocaine into crack, that conversion was necessary because there was not a market for powder cocaine

in Zanesville.  Remble and Owens' drug-trafficking relationship necessitated that Owens sell the

drugs as fast as possible, and then deliver the profits to Remble.  Given the evidence that Remble

sent others to Ohio to sell crack, Atkins's purchase of crack from Remble in Zanesville, and

Remble's statement to Covington, the district court did not err in concluding that Remble was

responsible for the crack cocaine sold by Owens as the sale of crack was a reasonably foreseeable

consequence of their drug conspiracy.  *Caver*, 470 F.3d at 246.  Thus, we conclude that resentencing

is not proper on this basis.

However, though not raised on appeal, we conclude that it is necessary to remand for

resentencing in light of the U.S. Supreme Court's decisions in *Kimbrough v. United States*, 128 S.

Ct. 558 (2007) and *Spears v. United States*, 129 S. Ct. 840 (2009).  *See United States v. Johnson*, 553

F.3d 990, 996 (6th Cir. 2009).  In *Spears*, the Supreme Court held "that district courts are entitled

to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement

with those guidelines." *Spears*, 129 S. Ct. at 844.  According to *Spears*, district courts may reject

and vary categorically from the crack-cocaine Guidelines "even in a mine-run case where there are

no particular circumstances that would otherwise justify a variance from the Guidelines sentencing

range." *Johnson*, 553 F.3d at 995 (quoting *Spears*, 129 S. Ct. 843) (internal quotation marks

omitted).

- 14 -

*Nos.  06-3909 & 07-3106*
*USA v. Anderson*

Here, the district court did not have the benefit of that authority when sentencing Remble to life imprisonment. *See Johnson*, 553 F.3d at 996 (vacating defendant's sentence and remanding for resentencing in light of *Spears*); *see also United States v. Fox*, 548 F.3d 523, 533 (7th Cir. 2008) (holding that it is appropriate to vacate the defendant's sentence and remand for resentencing if the defendant did not raise the crack-to-powder cocaine ratio as an issue before the district court or initially on appeal) and *United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008) (same). During the sentencing hearing, the district court stated: "[i]t's the duty of the Court to impose a sentence that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. The guidelines *recommend* a sentence of life in prison for Remble."  (Sentencing Hr'g Tr., Supplemental Joint Appendix 37 (emphasis added).)  As in *Johnson*, we cannot determine from the record before us whether the district judge would have imposed the same sentence had she known that she had discretion to vary categorically from the crack-cocaine guidelines based on policy disagreement.  *Johnson*, 553 F.3d at 996 n.1.  Further, the district court did not specify the Guidelines used to calculate Remble's base offense level, although we note that the presentence investigation report ("PSR") calculated the offense level using the 2005 amendments to the Guidelines.  However, the November 1, 2007 amendments to the Guidelines retroactively reduced the base offense levels for crack cocaine.  U.S.S.G. § 2D1.1(c) (2007).  Even if the district court applies the base offense level as calculated under the 2007 amendment to the Guidelines, the court may still "reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Johnson*, 553 F.3d at 996 n.1 (quoting *Spears*, 129 S. Ct. at 843).

- 15 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

**D. Anderson's Sentence**

Anderson relies primarily on *United States v. Colon-Solis*, 354 F.3d 101 (1st Cir. 2004), to

argue that he was not eligible to be sentenced to the ten-year statutory minimum under 21 U.S.C. §

841(b)(1)(A) because he was only responsible for the distribution of between 20 and 35 grams of

cocaine base rather than the greater amounts set forth in count one of the superseding indictment.

Anderson argues that under *Colon-Solis*, where the district court failed to make individualized

findings as to the amount of drugs for which Anderson could be held accountable, we must vacate

his sentence and remand for resentencing.  Because Anderson did not object to his sentence prior to

this appeal, we review for plain error.  *United States v. Williams*, 53 F.3d 769, 770 (6th Cir. 1995);

Fed. R. Crim. P. 52(b).  Plain error occurs if there is: (1) an error; (2) that is plain; (3) that affects

substantial rights; and (4) that seriously affects the fairness integrity or public reputation of judicial

proceedings.  *United States v. Caswell*, 456 F.3d 652, 655 (6th Cir. 2006) (citing *Johnson v. United

States*, 520 U.S. 461, 466-67 (1997)).

Under the first prong of the plain-error test, we must determine whether an error occurred.

Unlike Colon-Solis, whose guilty plea "left open" the amount of drugs with which he was involved,

*Colon-Solis*, 354 F.3d at 102, Anderson specifically admitted—both during his change of plea, and

at sentencing—that he "conspired with a number of individuals in distributing in excess of 50 grams

of cocaine base and other narcotics in the Southern District of Ohio and elsewhere."  (JA 194,

332-33.)  And, Anderson never contradicted this admission before the district court.  Despite

Anderson's limited role in the conspiracy, we must take Anderson at his word.  Accordingly,

Anderson's admission obviates the need for the "further fact-finding" required by *Colon-Solis*.

- 16 -

*Nos.  06-3909 & 07-3106*
*USA v. Anderson*

*See United States v. Ortiz-Torres*, 449 F.3d 61, 73 (1st Cir. 2006) (holding that the district court did not clearly err in determining the appropriate sentence for defendant based on his stipulation to the amount of drugs specifically attributable to him).  Here, other than the single clause in Anderson's PSR providing that the Government estimated Anderson as only being involved with the distribution of between 20 and 35 grams of cocaine base, Anderson has put forth no evidence that would show that further fact-finding by the court would have resulted in his receiving a lower sentence.  In sum, because Anderson cannot show the occurrence of any error, we need not decide the reach of *Colon-Solis* in this circuit.  For these same reasons, we need not reach the government's argument that, after this Court's decision in *United States v. Robinson*, 547 F.3d 632 (6th Cir.  2008), a district court may sentence a defendant involved in a conspiracy to the statutory mandatory minimum prison term, regardless of the amount of drugs personally attributable to him.

As to Anderson's claim that his trial counsel violated his Sixth Amendment right to counsel by failing to object to the trial court's imposition of a ten-year mandatory minimum sentence, we generally will not review an ineffective-assistance-of-counsel claim raised by a defendant for the first time on direct appeal because "[s]uch claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 before the district court in which the parties can develop an adequate record on the issue." *See United States v. Steverson*, 230 F.3d 221, 224 (6th Cir. 2000) (citing *United States v. Hill*, 142 F.3d 305, 308 (6th Cir.1998)).  Even assuming arguendo that Anderson's counsel was inadequate, we are not able to determine from the evidence in the record whether the result of the sentencing proceeding would have been different if Anderson's counsel had

- 17 -

*Nos. 06-3909 & 07-3106*
*USA v. Anderson*

objected to his sentence.  Therefore, we leave this claim for any collateral proceedings that Anderson

may wish to pursue.

### III.  CONCLUSION

For the reasons explained above, we **AFFIRM** Anderson's sentence and Remble's

conviction, but **VACATE** Remble's sentence and **REMAND** to the district court for resentecing.

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>100 EAST FIFTH STREET, ROOM 540</td><td></td></tr>
<tr><td>Leonard Green</td><td>POTTER STEWART U.S. COURTHOUSE</td><td>Tel. (513) 564-7000</td></tr>
<tr><td>Clerk</td><td>CINCINNATI, OHIO 45202-3988</td><td>www.ca6.uscourts.gov</td></tr>
</table>

Filed: May 26, 2009

Mr. Andrew P. Avellano
4181 E. Main Street
Columbus, OH 43213

Ms. Wende C. Cross
W. C. Cross & Associates
3460 Reading Road
The Cross Professional Building
Cincinnati, OH 45229

Mr. Kenneth L. Parker
U.S. Attorney's Office
221 E. Fourth Street
Suite 400 Atrium II Building
Cincinnati, OH 45202

> Re:  Case No. 06-3909/07-3106, *USA v. Anderson*
> Originating Case No. : 05-00113

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Nancy Barnes for Florence Ebert
Case Manager
Direct Dial No. 513-564-7022
Fax No. 513-564-7098

cc:  Mr. James Bonini

Enclosure

Mandate to issue